# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

CHARLES EDWARD JONES, JR.          CIVIL ACTION NO. 3:15-cv-0456
    LA. DOC #609011
VS.                                                         SECTION P

                                                            JUDGE ROBERT G. JAMES

R. H. TAYLOR, M.D., ET AL.               MAGISTRATE JUDGE KAREN L. HAYES

### REPORT AND RECOMMENDATION

*Pro se* plaintiff Charles Edward Jones, Jr., proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on February 25, 2015. Plaintiff is an inmate in the custody of Louisiana's Department of Corrections (DOC). He is currently incarcerated at the Catahoula Correction Center; however, he complains that he was denied appropriate medical care by health care professionals at the E.A. Conway Hospital (EACH) when he was a prisoner at the Franklin Parish Detention Center (FPDC). He sued Dr. R.H. Taylor, Physician's Assistant Jonathon Brewer, the EACH, and unnamed personnel at the DOC. He prays for compensatory damages. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

### *Background*

Plaintiff is an inmate in the custody of the DOC. On February 22, 2014, while incarcerated at the FPDC, he was attacked by another inmate who wielded a sock containing two locks as a weapon.  Plaintiff's left arm was injured and he was immediately transported to the

EACH where he was examined, x-rayed, and provided pain medication. Physicians Assistant Jonathan Brewer advised plaintiff that the x-rays indicated that plaintiff's arm was badly bruised but not broken. Plaintiff was prescribed 800 mg ibuprofen[1] and his arm was placed in a sling.

Plaintiff continued this therapy for 3 weeks but he remained in pain.  He was examined by a nurse at FPDC who, upon observing that his left arm was swollen, referred him to the Winnsboro Medical Clinic on April 23, 2014. Additional x-rays were taken and plaintiff was examined by Dr. Charles Reed, Physicians Assistant Clay Nichols, and nurses.  Reed and Nichols concluded that plaintiff's arm was broken. Plaintiff was prescribed 75 mg Diclofenac[2] and advised to return to EACH for further treatment.

Plaintiff then returned to EACH on May 2, 2014. X-rays were taken and plaintiff was again examined. Taylor and Brewer again concluded that plaintiff's arm was not broken. They disagreed with Reed and Nichols diagnosis.  Plaintiff was prescribed meloxicam.[3]

According to plaintiff, he remained in pain, experienced various hardships, and was

---

[1] Ibuprofen is in a class of medications called NSAIDs. It works by stopping the body's production of a substance that causes pain, fever, and inflammation and is used to relieve pain, tenderness, swelling, and stiffness caused by osteoarthritis (arthritis caused by a breakdown of the lining of the joints) and rheumatoid arthritis (arthritis caused by swelling of the lining of the joints). Medline Plus, A service of the U.S. National Library of Medicine, National Institutes of Health, Drugs, Supplements and Herbal Information. http://www.nlm.nih.gov/medlineplus/druginformation.html

[2] Diclofenac is also an NSAID used to treat pain and inflammation. Medline Plus, A service of the U.S. National Library of Medicine, National Institutes of Health, Drugs, Supplements and Herbal Information. http://www.nlm.nih.gov/medlineplus/druginformation.html

[3] Meloxicam, another NSAID, is used to relieve pain, tenderness, swelling, and stiffness. Medline Plus, A service of the U.S. National Library of Medicine, National Institutes of Health, Drugs, Supplements and Herbal Information. http://www.nlm.nih.gov/medlineplus/druginformation.html

2

unable to participate in the Work-Release or other rehabilitation programs.

On August 20, 2014, plaintiff was returned to Winnsboro Medical Clinic and again examined by Dr. Reed and Mr. Nichols. X-rays were again taken and Reed and Nichols again opined that plaintiff's arm was broken and his condition had deteriorated since his last visit.

On September 12, 2014, plaintiff was again taken to EACH where he was examined by Dr. Taylor and Mr. Brewer. X-rays revealed that plaintiff's condition had indeed deteriorated and plaintiff's arm was placed in a cast and he was provided ibuprofen for pain.

On October 24, 2014, plaintiff returned to EACH and the cast was removed. X-rays revealed that plaintiff's bone "had grown wrong." Dr. Taylor advised plaintiff that he would need surgery to correct the problem.

On October 31, 2014, plaintiff was returned to EACH for orthopedic surgery. Dr. Taylor inserted screws and a plate in his arm to correct the defect and plaintiff's arm was again placed in a cast.  Sometime in November the cast was replaced and remained in place until January 9, 2015, when it was removed.

On February 6, 2015, Dr. Taylor advised plaintiff that there would be no further treatment. Plaintiff was never offered physical or emotional rehabilitation and continues to suffer from the effects of his injury.

### *Law and Analysis*

### *1. Screening*

Plaintiff is a prisoner who has been permitted to proceed *in forma pauperis.* As a prisoner seeking redress from a defendant alleged to be an officer or employee of a governmental entity, his  complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v.*

*Scott,* 156 F.3d 578, 579-80 (5th Cir.1998) (per curiam). Because he is proceeding *in forma pauperis,* his complaint is also subject to screening under § 1915(e)(2).  Both § 1915(e)(2) (B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

## 2. Medical Care

Plaintiff is an inmate in the custody of the DOC. He complains that Dr. Taylor and Mr. Brewer mis-diagnosed his injury and that the mis-diagnosis  resulted in a delay in receiving appropriate medical care for the injury he sustained when he was assaulted by an inmate.

The constitutional right of a convicted prisoner to prompt and adequate medical care is based upon the Eighth Amendment's prohibition of cruel and unusual punishment.  In order to establish an actionable  violation of the Eighth Amendment,  the plaintiff must allege facts tending to establish that the defendants acted with deliberate indifference to his serious medical needs and safety.  *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir.2001). A showing of deliberate indifference with regard to medical treatment requires the inmate to submit evidence that prison officials " 'refused to treat him, ignored his complaints, intentionally treated

4

him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.' " *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citation omitted).

It is manifestly obvious that full compliment of diagnostics including x-ray examinations were provided by the defendants, Dr. Taylor and Mr. Brewer; nevertheless these health care professionals arrived at a different diagnosis than Dr. Reed and Mr. Nichols. Of course, plaintiff has chosen to agree with the diagnosis of Dr. Reed and Mr. Nichols and in so doing he disagrees with the initial conclusions and treatment options offered by Dr. Taylor and Mr. Brewer. However, plaintiff's disagreement with the health care professionals' diagnosis or treatment choices falls far short of establishing deliberate indifference since mere disagreement with medical diagnosis or treatment does not state a claim under the Eighth Amendment. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997), citing *Young v. Gray*, 560 F.2d 201, 201 (5th Cir.1977); *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir.1985). The factual allegations of plaintiff's complaint, taken as true, do not establish that the defendants refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.

Finally, even if the defendants erred, such error, if any, should be considered negligence and not deliberate indifference.  Of course, in the context of a civil rights complaint,  "... [m]ere negligence, neglect, or medical malpractice" do not constitute deliberate indifference. *Varnado v. Lynaugh*, 920 F.2d 320 at 321. Even "gross negligence" does not establish deliberate indifference. *Hernandez v. Tex. Dep't of Prot. and Reg. Servs.*, 380 F.3d 872, 882 (5th Cir. 2004).

In other words, plaintiff's medical care complaint fails to state a claim for which relief may be granted and dismissal on that basis is appropriate.

### Conclusion and Recommendation

Therefore,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.  1996).

In Chambers, Monroe, Louisiana, April 20, 2015.

_____
**KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE**